UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT WAYNE VIEAU, #163733,

    Petitioner,

                                            Civil No: 2:08-10370
                                            Honorable John Corbett O'Meara
                                            Magistrate Judge R. Steven Whalen

v.

LINDA M. METRISH,

    Respondent.

_____/

**OPINION AND ORDER GRANTING  RESPONDENT'S MOTION
TO DISMISS, DENYING A CERTIFICATE OF APPEALABILITY
& DENYING THE PURSUIT OF AN APPEAL *IN FORMA PAUPERIS***

      Petitioner, Robert Wayne Vieau, is a state inmate currently incarcerated at Thumb Correctional Facility in Lapeer, Michigan.  Petitioner was convicted after his Cheboygan  County Circuit Court jury trial of first-degree murder, Mich. Comp. Laws §750.316.  Petitioner was sentenced to life imprisonment.

      Petitioner has filed a petition for writ of habeas corpus through counsel under  28 U.S.C. §2254.  He raised the following claims: (1) Petitioner's habeas petition is timely; (2) jury instruction error; (3) ineffective assistance of trial counsel; (4) prosecutorial misconduct; (5) ineffective assistance of appellate counsel; and (6) double jeopardy violation.

      Pending before the Court is "Respondent's Motion to Dismiss for Failure to Comply with the Statute of Limitations" pursuant to Fed. R. Civ. P. 56(c).  Petitioner filed a

responsive pleading.  For the reasons that follow, the Court will grant Respondent's motion and

dismiss the habeas petition with prejudice.

## I. STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman,* 221 F.3d 846, 851 (6th Cir. 2000), quoting Fed R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his favor. *Id.* The summary judgment rule applies to habeas proceedings. *Redmond v. Jackson,* 295 F.Supp.2d 767, 770 (E.D. Mich. 2003).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one-year statute of limitations shall apply to an application of writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year statute of limitation shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action; (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1). A federal court will dismiss a case where a petition for a writ of habeas corpus does not comply with the one-year statute of limitations. See *Wilson v. Birkett,* 192 F.Supp.2d 763, 765 (E.D. Mich. 2002); see also *Holloway v. Jones,* 166 F.Supp.2d 1185, 1187 (E.D.

Mich. 2001).

However, the AEDPA is not applicable in this case because Petitioner's direct state appeals concluded on April 29, 1991, prior to the enactment of the AEDPA which was on April 24, 1996. Because enactment of the AEDPA could extinguish otherwise viable claims, the Sixth Circuit has held that "[p]etitioners whose convictions became final prior to the effective date of AEDPA on April 24, 1996, have a one-year grace period in which to file their petitions. *Searcy v. Carter,* 246 F.3d 515, 517 (6th Cir. 2001). As a result, a petitioner whose conviction became final prior to the effective date of the AEDPA had until April 24, 1997 to file his petition. *Payton v. Brigano,* 256 F.3d 405, 407 (6th Cir. 2001); 28 U.S.C. §2244(d)(1)

## II. DISCUSSION

### A. Timeliness of Habeas Petition

In this case, the direct appeal of Petitioner's conviction ended on April 29, 1991, when the Michigan Supreme Court denied Petitioner's motion for reconsideration of the Court's February 7, 1991 Order denying Petitioner's application for leave to appeal.[1]  *People v. Vieau,* No: 88916

---

[1] Petitioner sought an appeal from his first trial; and his conviction was affirmed. *People v. Vieau,* No: 56409 (Mich Ct. App. Aug. 20, 1984). However, there was a lengthy dissent addressing a spousal privilege issue. Petitioner filed an application for leave to appeal with the Michigan Supreme Court and it held the application in abeyance pending the decision in another matter (i.e., *People v. Love,* 425 Mich. 691; 391 NW2d 738 (1986)). *People v. Vieau,* No: 74981 (Mich. Sup. Ct. July 23, 1985). Following the decision in *People v. Love,* the matter was remanded for a new trial. *People v. Vieau,* No: 95585 (Mich. Ct. App. Nov. 7, 1986). On May 30, 1987, following the second jury trial, Petitioner was again convicted of first-degree premeditated murder. He was sentenced on July 28, 1987. Petitioner appealed his conviction to the Michigan Court of Appeals and it was affirmed. *People v. Vieau,* No: 107351 (Mich. Ct. App. April 5, 1990). Petitioner filed an application for leave to appeal with the Michgian Supreme Court which was denied. *People v. Vieau,* No: 88916 (Mich. Ct. App. Feb. 7,

(Mich. Sup. Ct. April 29, 1991). Because Petitioner's conviction became final before the April 24, 1996 enactment date of the AEDPA, Petitioner had one-year from April 26, 1996 to timely file a petition for habeas relief with the federal court. 28 U.S.C. §2244(d)(1)(A). Absent state collateral review, Petitioner would have been required to file his petition for writ of habeas corpus with the federal court no later than April 24, 1997.

A properly filed application for state post-conviction review or other state collateral review (i.e., motion for relief from judgment or motion for a new trial) tolls the statute of limitations during the period the application is pending, but it cannot revive the statute of limitations period (i.e., restart the clock) after the limitations period has expired. See *Hargrove v. Brigano,* 300 F.3d 717, 718, n.1 (6th Cir. 2002); 28 U.S.C. §2244(d)(2). Such a post-judgment filing can only serve to pause a clock that has not yet fully run. *Benoit v. Bock,* 237 F.Supp.2d 804, 807 (E.D. Mich. 2003). Once the limitations period has expired, collateral petitions can no longer serve to avoid a statute of limitations.

Petitioner filed his motion for relief from judgment on October 5, 2001, more than four years after the statute of limitation period expired. Therefore, Petitioner's habeas petition is untimely, absent statutory or equitable tolling.

### B. Statutory Tolling Pursuant to 28 U.S.C. §2244(d)(2)

Following the conclusion of Petitioner's collateral review of the trial court's decision to deny his motion for relief from judgment on January 27, 2006, *infra,* he filed another motion for relief from judgment on March 22, 2006. Although Petitioner's filing of his second motion for

---

1991). Petitioner then filed a motion for reconsideration with the Michigan Supreme Court which was also denied. *People v. Vieau,* No: 107351 (Mich. Sup. Ct. April 29, 1991).

relief from judgment would have tolled the statute of limitations, *Hudson v. Martin,* 68 F.Supp.2d 798, 801 (E.D. Mich. 1999), he failed to do so until well after (i.e., over four years) the statutory period had already expired prior to the filing of his first motion for relief from judgment. Because the one-year limitations period had already expired by the time Petitioner filed his first post-conviction motion, the filing of his second motion did not toll the limitations period, and the petition is therefore untimely. Consequently, the statutory tolling available under §2244(d)(2) does not benefit Petitioner.

### C. Statutory Tolling Pursuant to 28 U.S.C. §2244(d)(1)(D)

Petitioner next claims that statutory tolling is applicable pursuant to 28 U.S.C. §2244(d)(1)(D), *supra*, because the factual predicate for his actual innocence claim could not have been discovered through the exercise of due diligence in sufficient time in which to comply with the statutory time period requirements. Petitioner asserts that the factual predicate in this matter was not discovered until expert testimony at an evidentiary hearing, which took place over the course of two days on February 20, 2003 and February 21, 2003, revealed by Dr. Werner Spitz and Dr. Ronald Failer. These doctors testified that although decedent was allegedly shot three times by Petitioner[2], the decedent's cause of death was not a result of his gun shot wounds, but rather from a pulmonary embolism which was negligently treated by decedent's treating physicians. Therefore, Petitioner asserts that the evidentiary hearing testimony constitutes new evidence in support of his actual innocence claim because it was medical malpractice which caused decedent's death and not Petitioner's alleged actions of shooting decedent multiple times. The Court rejects Petitioner's

---

[2]Petitioner does not dispute in his habeas pleadings that he is the individual who shot the decedent, Gary Williams, three times (i.e., left thigh, left side of neck, and left shoulder).

tolling argument pursuant to 28 U.S.C. §2244(d)(1)(D) for two reasons.

The Court notes that the statute only serves to toll the statute of limitations until discovery of the factual predicate, and Petitioner would have one year after that discovery to file the petition or file a collateral attack in the state court to toll the statute. Since the alleged factual predicate was discovered during Petitioner's collateral attack in this case[3], the statutory period in which to file a habeas petition would not have begun to run until the conclusion of the collateral review which was January 27, 2006. Petitioner filed his first habeas petition on January 26, 2007, and was therefore timely with his habeas filing from the narrow standpoint of the proper timing in filing it following the second motion for relief from judgment.[4]

First, Petitioner claims that it was only when Drs. Spitz and Failer testified at the 2003 evidentiary hearing regarding their opinions about how decedent died that he became aware of the factual predicate supporting his actual innocence claim (i.e., a pulmonary embolism precipitated by medical malpractice was decedent's cause of death and not the bullet wounds). However, the record clearly belies this argument.

During Petitioner's second trial on May 27, 1987, Dr. Gene Howard Webster, a pathologist

---

[3]The evidentiary hearing took place subsequent to the filing of Petitioner's October 5, 2001 motion for relief from judgment.

[4]Petitioner filed his first habeas petition under case number 07-10423. Petitioner sought a stay of proceedings in order to exhaust certain habeas claims. The Court denied the motion and dismissed the case without prejudice. However, the Court allowed for tolling of the limitations period while he exhausted his claims in the state courts and permitted Petitioner to return to this Court for review of his habeas claims. Upon return to this Court, the case was filed under the present case number (08-10370) with Judge Robert H. Cleland presiding, and was reassigned to Judge Corbett O'Meara, who was the original judge overseeing this matter.

and a witness for the prosecution, testified that the bullet wound to decedent's leg is what caused decedent's death because it was that wound which caused the formation of the pulmonary embolism. However, Dr. Webster also made several other statements during his testimony which would have put Petitioner on notice about the theory that the pulmonary embolism was the cause of decedent's death and that a different medical treatment approach could have prevented his death.

> Q. And when you got into your examination - - based on the examination and the wounds that you described, did you formulate an opinion from your experience as to the cause of
> Mr. Williams' death?
>
> A. Cause of Mr. Williams' death was a development of a clot in the femoral vein, which lies just inside little bit back remaining from the artery - - clot formed there, traveled to the heart and plugged up the main pulmonary. [T.T., 5/27/1987, p. 162].
>
> \* \* \*
>
> Q. And then you're saying the clot formed and made its way up to the heart and then how would you describe how that would cause the death of Mr. Williams?
>
> A. Well, the clot formed, when it went up to the heart through the inferior vena cavity to the right side of the heart, plugged up the right side of the heart – could be no circulation to the heart; circulation to the heart stopped.
>
> Q. How would that affect Mr. Williams? What would that cause"?
>
> A. Well, what happened was the morning of his death it was apparent that he was having pulmonary embolism and the hope was that he could be put on a heart and lung preparation in an effort to take, but that was not possible. He had progressive – he had a series of cardiac arrests – heart stopped beating. He was – the heart beat was restored, I believe, on two or three occasions and the third occasion it was not restored. [T.T., 5/27/1987, pp. 163-64].
>
> \* \* \*
>
> Q. So the cause of Mr. Williams' death was pulmonary embolism?
>
> A. Two pulmonary emboli. [T.T.,5/27/1987, p. 164].

7

\* \* \*

A.  I think he – I think cause of death was the embolus that occurred at the No. 3 , the thigh.   [T.T., 5/27/1987, p. 167].

Defense counsel then asked a series of questions on cross examination regarding decedent's treating physicians' decision not to administer anti-coagulants, why certain procedures were not adhered to prior to and during decedent's cardiac arrests, and why the individuals in charge of decedent's care did not engage in a more aggressive degree of monitoring.   (T.T., 5/27/1987, pp. 172-187).   On redirect examination the prosecuting attorney specifically asked Dr. Webster a series of questions regarding his opinions as to whether he felt decedent's treating physicians acted appropriately in their care and treatment of decedent.   (T.T., 5/27/1987, pp. 187-89).   Dr. Webster indicated that he felt that the treating physicians "did everything they possibly could to preserve his life . . ."   (T.T., 5/27/1987, p. 188-89)[5].

Therefore, Dr. Webster's testimony and the questions posed to him by defense counsel and the prosecutor on May 27, 1987 demonstrate that Petitioner was aware of a defense theory regarding an alternative cause of death and the medical malpractice issue.  Drs. Spitz and Failer's evidentiary hearing testimony about the same theory of the case and cause of death fifteen years later does not constitute a newly discovered factual predicate.   Nothing prevented Petitioner from raising these issues on direct appeal following his 1987 trial.

28 U.S.C. §2244(d)(1)(D) provides a petitioner with a later accrual date based upon a factual

---

[5]From reading the transcript, Dr. Webster seems to suggest that there were other options in treating decedent that were not implemented by his treating physicians, but would have been had decedent's medical circumstances been different. Essentially he opined that if decedent had been stable enough, from a medical standpoint, other forms of treatment were available may have been used to save decedent' life (i.e., use of a heart-lung pump).   (T.T., 5/27/1987, pp. 173, 188-89).

8

predicate argument only if vital facts could not have been known earlier. *Schlueter v. Varner,* 384 F.3d 69, 74 (3d Cir. 2004). Petitioner undoubtedly knew the facts underpinning his actual innocence claim during his second trial upon hearing the questioning of and testimony by Dr. Webster. Petitioner was sentenced on July 28, 1987; his direct appeal concluded on April 29, 1991; and for reasons previously stated, he had until April 24, 1997 to file a habeas petition or file a post-conviction motion for collateral review. However, Petitioner sought no further relief in this matter until October 5, 2001, well after the expiration of the statutory period. Thus, 28 U.S.C. §2244(d)(1)(D) cannot prevent Petition's petition from being untimely.

Second, Petitioner argues that "[i]t was only when Drs. Failer and Sptiz testified as to their medical opinions did there become a <u>factual predicate</u> for the claim of innocence, the claim of faulty representation, and the claim that the court failed to properly instruct the

jury. Until the state court granted a hearing there was <u>no</u> factual predicate showing that unlawful medical treatment caused Williams' death." (Reply at 4). The Court disagrees. The proper inquiry in this case "is to determine when a duly diligent person in petitioner's circumstances would have discovered" the basis of his actual innocence, instructional error, and faulty representation claims[6]. See *Wims v. United States,* 225 F.3d 186, 190 (2d. Cir. 2000). The record shows that the factual development of Petitioner's claims accrued during his second trial and could have been pursued in federal court following his direct appeal. Notwithstanding the evidentiary testimony of Drs. Sptiz or Failer, the record demonstrates that Petitioner knew or certainly should have known

---

[6]The viability of each of Petitioner's claims are based upon his actual innocence argument. Therefore, if his actual innocence claim fails, the remaining issues likewise fail.

9

about the basis for his factual predicate argument during his second trial. The statute does not require court testimony to establish a factual predicate, only that the basis of the claim could have been discovered through the exercise of due diligence. Dr. Webster's testimony should have been discovered in time enough to file a timely habeas petition or a collateral attack. Accordingly, 28 U.S.C. §2244(d)(1)(D) will not save the habeas petition from being time-barred.

### D.  Equitable Tolling

Petitioner also argues that even if his petition is untimely, he should be entitled to equitable tolling because newly discovered evidence establishes a credible claim for actual innocence.

The Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations," *Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005), but the United States Court of Appeals for the Sixth Circuit has stated that the statute of limitations is not jurisdictional, *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003), and that equitable tolling applies to the one-year limitation period for habeas petitions. *See Dunlap v. United States*, 250 F.3d 1001, 1003 (6th Cir. 2001). A petitioner who seeks equitable tolling generally "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace*, 125 S. Ct. at 1814.

In this Circuit, courts must consider and balance the factors set out in *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988), "unless there is congressional authority to the contrary." *Dunlap*, 250 F.3d at 1009. The *Andrews* factors are:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) [the] petitioner's reasonableness in remaining ignorant of the legal requirement for filing the claim.

[*Dunlap*, 250 F.3d] at 1008.

These factors are not necessarily comprehensive and they are not all relevant in all cases. *Cook v. Stegall*, 295F.3d 517, 521 (6th Cir. 2002). Ultimately, the decision whether to equitably toll a period of limitations must be decided on a case-by-case basis. *Id.*; *Miller v. Collins*, 305 F.3d 491, 495 (6th Cir. 2002).

"In essence, the doctrine of equitable tolling allows federal courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Keenan* v. Bagley, 400 F.3d 417, 421 (6th Cir. 2005) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir.2000)); *see Pace*, 544 U.S. at 418. Equitable tolling should be granted only "sparingly." *Keenan*, 400 F.3d at 420 ("Equitable tolling is permissible under the [AEDPA], although rare.") (citation omitted). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002).

Lack of prejudice to the respondent is not an independent basis for invoking the doctrine of equitable tolling, *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), and Petitioner has not alleged that he lacked notice or constructive knowledge of the filing requirement.

The one-year statute of limitations may also be equitably tolled by a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo,* 513 U.S. 298 (1995); See *Souter v. Jones,* 295 F.3d 577, 599-600 (6th Cir. 2005). To establish actual innocence. "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 590 (quoting, *Schlup,* 513 U.S. at 327). For an actual innocence exception to be credible, such a clam requires a habeas petitioner to support his

11

allegations of constitutional error "with new reliable evidence-whether it be exculpatory, scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup,* 513 U.S. 324; *Souter,* 395 F.3d at 590. The Sixth Circuit has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Souter,* 395 F.3d at 590. (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)). The Sixth Circuit has emphasized the Supreme Court's admonition that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case,'" *Id.,* (quoting *Schlup*, 513 U.S. at 321).

An actual innocence claim "is not itself a constitutional claim but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." *Schlup,* 513 U.S. at 315. "A petitioner's burden at the gateway state is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt – or, to remove the double negative, that more than not any reasonable juror would have reasonable doubt."

Petitioner claims that although he shot Gary Williams three times, he is actually innocent of first-degree murder because it was a pulmonary embolism which caused decedent's death. Petitioner in this case has presented no new reliable evidence to establish that he was actually innocent of the crimes charged. Although the evidentiary hearing testimony of Drs. Spitz and Failer may be "new," and not offered as evidence at Petitioner's 1987 trial, the factual underpinnings and substance of their testimony was in fact offered, raised, inquired about, and disputed by other experts during his 1987 trial through the testimony of Dr. Webster. Furthermore, Petitioner has not advanced any argument that equitable tolling otherwise should apply in this case. Having not met the burden under *Souter,* Petitioner cannot avoid dismissal on timeliness grounds. Therefore,

equitable tolling is not appropriate here and cannot save the habeas petition from being time-barred.

### E. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the Court studied the record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court finds that reasonable jurists would not debate the Court's conclusion that Petitioner does not present any claims upon

which habeas relief may be granted. Therefore, the Court denies a certificate of appealability.

### F. *In Forma Pauperis* on Appeal

Federal Rule of Appellate Procedure 24(a)(1) provides that a party to a district court action who desires to appeal *in forma pauperis* must file a motion in the district court. An appeal may not be taken *in forma pauperis* if the court determines that it is not taken in good faith. 28 U.S.C. §1915(a)(3). The standard governing the issuance of a certificate of appealability is more demanding than the standard for determining whether an appeal is in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed *in forma pauperis* if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.

The Court concludes that Petitioner should not be granted leave to proceed on appeal *in forma pauperis* as any appeal would be frivolous. See Fed. R. App. 24. Petitioner's habeas petition was clearly filed beyond the statutory period and no degree of statutory or equitable tolling will save the habeas petition from being time-barred.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that "Respondent's Motion to Dismiss for Failure to Comply with the Statute of Limitations" [Dkt. #6] is **GRANTED** and the habeas petition is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that any request for Petitioner to proceed *in forma pauperis* on appeal is **DENIED.**

**SO ORDERED.**

s/John Corbett O'Meara  
United States District Judge

Date:  August 13, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 13, 2009, by electronic and/or ordinary mail.

s/William Barkholz  
Case Manager
